## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Pending in the U.S. District Court for the District of Columbia:
*U.S. Dominion, Inc. et al., v. My Pillow, Inc., et al.*, 1:21-cv-00445 (CJN)

| | |
|---|---|
| IN RE: SUBPOENA SERVED ON MONROE COUNTY, FL SUPERVISOR OF ELECTIONS | Civil Action No. _____ |

## MOTION TO QUASH RULE 45 SUBPOENA
## AND INCORPORATED MEMORANDUM OF LAW

MONROE COUNTY ATTORNEY'S OFFICE
1111 12th St. Suite 408
Key West, FL 33040
Tel:  (305) 292-3470
Fax:  (305) 292-3516
Robert B. Shillinger, Jr. (Fla. Bar 058262)
County Attorney
Shillinger-bob@monroecounty-fl.gov
Cynthia L. Hall (Fla. Bar 34218)
Sr. Assistant County Attorney
Hall-cynthia@monroecounty-fl.gov
Patricia A. Eables (Fla. Bar 491012)
Assistant County Attorney
Eables-patricia@monroecounty-fl.gov

*Counsel of Record for Hon. R. Joyce Griffin,*
*Supervisor of Elections for Monroe County, Florida*

## Table of Contents,

INTRODUCTION ................................................................................................................ 1

BACKGROUND FACTS .................................................................................................... 2

LEGAL STANDARD........................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

  I.  DEFENDANTS' SUBPOENA REPRESENTS A GRAVE INTRUSION INTO
     THE CYBERSECURITY OF A LOCAL JURISDICTION'S ELECTION
     VOTING SYSTEM................................................................................................... 5

  II.  THE SUBPOENA SHOULD BE QUASHED BECAUSE IT CALLS FOR
     DISCOVERY OF CONFIDENTIAL AND PROPRIETARY INFORMATION,
     WHICH THE
     SUPERVISOR OF ELECTIONS IS OBLIGATED TO KEEP PRIVATE
     PER THE TERMS OF THE AGREEMENT BETWEEN MONROE COUNTY
     AND DOMINION. ................................................................................................... 10

  III.  THE SUBPOENA MUST BE QUASHED BECAUSE IT IS UNDULY
     BURDENSOME, BOTH IN THE ABSOLUTE AND PARTICULARLY
     AS APPLIED TO A LOCAL JURISDICTION LESS THAN SEVEN WEEKS
     AWAY FROM A MIDTERM ELECTION.................................................................. 12

  IV.  IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ISSUED TO
     ALLOW FOR PRODUCTION OF REPORTS SOUGHT IN REQUESTS 4(A)-
     (B), 7 AND 8, AFTER THE ELECTION.................................................................. 15

CONCLUSION.................................................................................................................... 16

CERTIFICATE OF GOOD FAITH COMPLIANCE WITH LOCAL RULE 7.1 ....................... 17

# Table of Authorities

**Cases**

*Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) ............ 12, 15

*Benedict v. McMahon*, 325 F.R.D. 447, 452 (E.D. Pa. 2016)....................................................... 11

*Bhatt v. Lalit Patel Physician P.C.*, No. 18-cv-2063, 2020 WL 13048694,
    at *2 (E.D. N.Y. 2020) ............................................................................................................ 10

*Curling v. Raffensperger*, 493 F. Supp. 1264, 1279 (N.D. Ga. 2020) ......................................... 12

*Fadalla v. Life Automotive Prod.*, 258 F.R.D. 501 (M.D. Fla. 2007)............................................ 14

*First Sealord Sur. v. Durkin & Debries Ins.* Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) . 3

*Haggard v. Spine*, 2009 WL 1655030, at *7 (D. Colo. 2009). ...................................................... 11

*In re. Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) ........................... 4

*Jennings v. Elections Canvassing Comm'n*, 958 So. 2d 1083 (Fla. 1st DCA 2007)..................... 12

*Jordan v. Commissioner, Miss. Dep't of Corrections*, 947 F.3d 1322, 1336 (11th Cir. 2020) ..... 10

*Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) .......................................................... 3

*Ortiz-Carballo v. Ellspermann*, No. No. 5:08–cv–165–Oc–10GRJ, 2009 WL 961131,
    at *1 (M.D. Fla. 2009).............................................................................................................. 4

*Premier Election Solutions, Inc. v. Systest Labs, Inc.*, No. 09-cv-01822-WDM-KMT .............. 11

*Premier Election Solutions, Inc.*, 2009 WL 3075597, at 7 ........................................................... 12

*United States v. Lacey*, No. CR-18-00422, PHX-SMB, 2020 WL 85121,
    at n. 14 (D. Ariz. Jan. 7, 2020) (slip. op.)................................................................................ 3

*United Technologies Corp. v. Mazer*, No. 05-80980-CIV, 2007 WL 788877,
    at *1 (S.D. Fla. Mar. 14, 2007). .............................................................................................. 12

*Williams v. City of* Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998). ............................................ 15

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) .................................... 14

*Wiwa*, 392 F.3d at 818 ................................................................................................................... 15

**Statutes**

6 U.S.C. §§ 1501-1510 ..................................................................................................................... 8

Fed. R. Civ. P. 45(d)(3)(A)(iii). ..................................................................................................... 10

Fla. Stat. § 101.45 ......................................................................................................................... 17

Fla. Stat. § 101.5605 ..................................................................................................................... 17

Fla. Stat. § 101.5605(3)(e) ............................................................................................................ 18

Fla. Stat. § 101.5607(1)(a) ................................................................................... 10

Fla. Stat. § 101.5610 .............................................................................................. 17

Fla. Stat. § 101.5612 .............................................................................................. 17

Fla. Stat. § 119.071(1)(f) ........................................................................................ 10

Fla. Stat. § 119.0725 ........................................................................................... 9, 10

Fla. Stat. § 119.0825(1)(b) (2022) ........................................................................... 9

Fla. Stat. § 812.081(1)(f) ........................................................................................ 13

Fla. Stat. § 97.021(47) ............................................................................................... 2

**Other Authorities**

Cybersec. & Infrastructure Sec. Agency, *Critical Infrastructure Cyber Risk Assessment* (July 28, 2020), available at:  www.cisa.gov › files › cisa-election-infrastructure-cyber-risk-assessment 5

Florida Dep't of State, *Joint Statement from the Florida Secretary of State and Florida Supervisors of Elections in Response to the June 3, 2022 Cybersecurity and Infrastructure Security Agency Advisory* (June 3, 2022) ................................................................... 7

Florida Division of Elections, *Election Dates and Activities Calendar 2022-2023*, available at: https://dos.myflorida.com/elections/for-voters/election-dates/ and https://dos.myflorida.com/elections/forms-publications/publications/. .................................. 17

Jeh Johnson, Secretary, Department of Homeland Security, *Statement by Secretary Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector* (Jan. 6, 2017), *available at:*  https://www.dhs.gov/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical ................................................................. 6

Richard L. Hasen, *Identifying and Minimizing the Risk of Election Subversion and Stolen Elections in the Contemporary United States*, 135 Harv. L. Rev. F. 265, 280 (2022) .............. 8

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 4

Fed. R. Civ. P. 45(d)(3)(A)(iv) ............................................................................... 14

Fed. R. Civ. P. 45(d)(3)(B)(i) .................................................................................. 11

**Exhibit List**

A          Subpoena to Produce Documents, Information, or Objects or to Permit
           Inspection of Premises in a Civil Action

B          Voting System Agreement by and between Dominion Voting Systems, Inc.
           and Monroe County, Florida

C          Affidavit of Hon. R. Joyce Griffin, Supervisor of Elections for Monroe
           County, Florida

D          Affidavit of Mark Earley

E          Florida Division of Elections, *Elections Dates and Activities Calendar 2022-
           2023*.

Pursuant to Rule 45(d)(3) and Rule 26 of the Federal Rules of Civil Procedure, through undersigned counsel, the Honorable R. Joyce Griffin, Supervisor of Elections for Monroe County, Florida ("SOE"), a Non-Party, hereby respectfully moves to quash the Subpoena To Produce Documents, Information, or Objects or To Permit Inspection of Premises in Civil Action ("Subpoena") issued in the case of *U.S. Dominion, Inc. et al. v. My Pillow, Inc. et al.*, 1:21-cv-00445 (CJN), served by Defendants My Pillow, Inc. and Michael J. Lindell (collectively, "Defendants"), or in the alternative, moves for issuance of a protective order, on the grounds stated herein.

### INTRODUCTION

SOE moves to quash the Rule 45 Subpoena on three grounds. <u>First</u>, the forensic images and documentation sought regarding her election voting system constitutes a threat to the cybersecurity of the system. <u>Second</u>, many of the documents required by the Subpoena are confidential and proprietary trade secrets and should therefore be protected from discovery. <u>Third</u>, the amount of work necessary to produce images and documents, the sheer volume of documents requested, and the fact of a midterm election to be held in November 2022 together with all actions leading up to the election, when put together, make timely compliance impossible. In short, the Defendants' subpoena seeks to compel the SOE to divert her limited resources away from administering the fast-approaching mid-term election in order to hand over the veritable "keys to the kingdom"[1] of her voting system in a manner that would render that system vulnerable to cyber-attacks during that very same mid-term election.

---

[1] *King James Bible,* Matthew 16:19; *see also* *https://securityintelligence.com/protect-the-keys-to-your-kingdom-with-privileged-access-management/*.

## BACKGROUND FACTS

On February 2, 2021, Plaintiffs US Dominion, Inc., Dominion Voting Systems Inc., and Dominion Voting Systems Corporation ("Plaintiffs") filed a lawsuit alleging defamation and unfair and deceptive trade practices against Defendants My Pillow, Inc. and Michael J. Lindell ("Defendants") over statements made by Mr. Lindell during and after the 2020 election. The Complaint was filed in the U.S. District Court for the District of Columbia, Case No. 1:21-cv-00445-CJN. *See* Compl. ¶¶ 163-172 and 173-178 [ECF 1]. Jurisdiction is based on diversity. *See* Compl. ¶ 11 [ECF 1].

On September 7, 2022, a Subpoena issued by Defendants in the District Court for the District of Columbia was served on the Supervisor of Elections for Monroe County ("SOE"), a copy of which is attached hereto as **Exhibit A.** (Affidavit of R. Joyce Griffin ("Aff. Griffin"), ¶ 3.) The Subpoena calls for twenty-two categories of documents regarding the Dominion voting system[2] used by Monroe County during the 2020 election, and to permit inspection, copying, testing, or sampling of the materials, at the offices of the SOE in Key West, Florida, on September 30, 2022. SOE served timely objections on Defendants on September 20, 2022 in compliance with Rule 45(d)(2)(B).

The documents fall generally into three categories. <u>First</u>, the Subpoena seeks a complete look into the County's voting system as it existed during the November 2020 election, including forensic images of any of the drives used by Monroe County in the November 2020 election for any of the hardware components of the system, including tabulators, scanners, computers,

---

[2]   The term "voting system" is defined in Section 97.021, Florida Statutes, to mean "a method of casting and processing votes" and includes the programs, operating manuals, supplies, printouts, and other software necessary for the system's operation. Fla. Stat. § 97.021(47).

printers, SD cards, USB drives, and other storage devices, all in EnCase format,[3] a complete diagram of the County's system showing all the computers that run it and any component parts of the Dominion voting system connected to it, virtual "addresses" (media access control (MAC) addresses) for each piece of hardware, and "credentials" (user names and passwords) necessary to read all documents produced.  Second, the Subpoena seeks the name of any person who had "access" to any part of the system at any time during a 22-month time period.  Third, the Subpoena seeks documents created regarding the 2020 election, including not only poll closing reports, the contract with Dominion, and the certified election results, but also "any document, report, or spreadsheet that was produced in relation to the November 2020 election."

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the manner in which parties may obtain evidence by subpoena.  *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005).  Rule 45 is intended to prevent abuse of the subpoena power and requires that a district court protect the property rights of the person subject to the subpoena.  *Id.*  "A subpoena under Rule 45 must fall within the scope of proper discovery under Rule 26(b)(1)."  *First Sealord Sur. v. Durkin & Debries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (citation and internal quotation marks omitted).  Pursuant to that Rule, "parties may obtain discovery regarding any non-privileged matter if the information sought 'is relevant to any party's claim or defense.'"  *Ortiz-Carballo v. Ellspermann*, No. No. 5:08–cv–165–Oc–10GRJ, 2009 WL 961131, at 1 (M.D. Fla. 2009) (citing Fed. R. Civ. P. 26(b)(1)).  Information is relevant only if the discovery sought is "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

---

[3] EnCase is apparently a forensic copy format.  *See United States v. Lacey*, No. CR-18-00422, PHX-SMB, 2020 WL 85121, at n. 14 (D. Ariz. Jan. 7, 2020) (slip. op.).

"The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *In re. Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). The party making the requests must first show that its requests are relevant within the meaning of Rule 26(b)(1). *Id.* The burden then shifts to the nonparty to show that disclosure of the information is protected under either Rule 45(d)(3)(A) or (B). *Id.* If the nonparty claims protection either under Rule 45(d)(3)(B) or asserts an undue burden under Rule 45(d)(3)(A), the nonparty must show a "clearly defined and serious injury." *Id.* If the nonparty meets its burden, the Court conducts a balancing test by weighing the requesting party's interest against the nonparty's interest to determine whether the burden is undue. *Id.*

**ARGUMENT**

**I.     DEFENDANTS' SUBPOENA REPRESENTS A GRAVE INTRUSION INTO THE CYBERSECURITY OF A LOCAL JURISDICTION'S ELECTION VOTING SYSTEM.**

The federal Cybersecurity & Infrastructure Security Agency, created in 2018 to address cybersecurity attacks, has stated that "[c]yber attacks on the integrity of state-level voter registration, pollbooks, and election websites, as well as on the preparation of ballots, **voting machines, and tabulation systems,** have the potential for greatest functional impact to the ability of jurisdictions to conduct elections, . . .."  Cybersec. & Infrastructure Sec. Agency, *Critical Infrastructure Cyber Risk Assessment* (July 28, 2020) (emphasis added), available at: www.cisa.gov › files › cisa-election-infrastructure-cyber-risk-assessment.  In a Statement issued on January 6, 2017, the Secretary of Homeland Security said:

> I have determined that election infrastructure in this country should be designated as a subsector of the existing Government Facilities critical infrastructure sector.  Given the vital role elections play in this country, it is clear that certain systems and assets of election infrastructure meet the definition of critical infrastructure, in fact and in law.
>
> I have reached this determination so that election infrastructure will, on a more formal and enduring basis, be a priority for cybersecurity assistance and protections that the Department of Homeland Security provides to a range of private and public sector entities. By "election infrastructure," we mean storage facilities, polling places, and centralized vote tabulations locations used to support the election process, and information and communications technology to include voter registration databases, voting machines, and other systems to manage the election process and report and display results on behalf of state and local governments.

Jeh Johnson, Secretary, Department of Homeland Security, *Statement by Secretary Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector* (Jan. 6, 2017), *available at:*  https://www.dhs.gov/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical.

The Florida Division of Elections, the Florida agency in charge of election security, also regards cybersecurity as of utmost importance.  On June 3, 2022, the Florida Secretary of State and the Florida Supervisors of Elections issued a joint statement ("Florida Remains the Gold Standard for Election Administration"):

> Florida election law requires the use of paper ballots, robust certification standards for all voting systems, **strict security procedures** that are reviewed and updated before each election cycle, pre- and post-election public testing of the voting equipment used, comprehensive chain of custody procedures, background checks on all employees and rigorous post-election audits.  **Our protocols provide strong preemptive safeguards to prevent any unauthorized person from having unfettered physical access with passwords and access control mechanisms to our systems.**
>
> "The safeguards we have established in Florida to protect the voice of our voters and our democracy are the core of what we do," said Leon County Supervisor of Elections and Florida Supervisor of Elections President Mark Earley. "The vulnerabilities detailed in the report are analogous to leaving your car unlocked with the keys on the front seat and then being surprised that someone might be able to steal it.  That is not how we treat ballots or voting systems in Florida.  We keep them securely stored, sealed, locked, and monitored at all times as part of our security procedures. We also test, retest, audit, and review our procedures after each election cycle to continually improve our practices to meet the latest evolving threats."

Florida Dep't of State, *Joint Statement from the Florida Secretary of State and Florida Supervisors of Elections in Response to the June 3, 2022 Cybersecurity and Infrastructure Security Agency Advisory* (June 3, 2022), available at:

https://dos.myflorida.com/communications/press-releases/2022/joint-statement-from-the-florida-secretary-of-state-and-florida-supervisors-of-elections-in-response-to-the-june-3-2022-cybersecurity-and-infrastructure-security-agency-advisory/ (emphasis added).

Yet, through their Subpoena, Defendants request the very information that would allow infiltration of the County's voting system.[4]  Defendants seek a diagram of the system; the media access control (MAC) addresses showing how the components connect within the network; internet protocol (IP) addresses that identify devices on the network; and the credentials (user names and passwords) to permit access to all images and all documents produced in response to the Subpoena.  Producing the bulk of the items demanded by the Subpoena would be an extreme and unprecedented security breach, would set a dangerous precedent for users of any voting system, and would have the potential to erode the public's trust in security of the County's voting system from that point forward.  SOE objects to the Subpoena on the grounds that the disclosure of information contained in the documents demanded by the intrusive Subpoena would violate cybersecurity requirements in 6 U.S.C. §§ 1501-1510, as well as the State Cybersecurity Act, Section 212.318, Florida Statutes, and would compromise the cybersecurity of Monroe County's voting system.

The risk that images and documents regarding this critical infrastructure would be distributed to others with serious consequences, even with a protective order in place, is very real:

> The risk of election officials undermining the security of election systems was on full display in August 2021, when the Mesa County, Colorado, election administrator Tina Peters spoke at a conference organized by MyPillow chief executive Mike Lindell that perpetuated false statements that the 2020 election was stolen. Although Peters denied releasing the source code used on Dominion Voting Systems (Dominion) voting machines, she admitted copying it, and the Lindell conference made the code publicly

---

[4] *See* Exhibit A, Requests 1(a)-(h) (forensic images of all drives); 2(a) (forensic images of all slog.txt and .dvd files) ("slog" stands for "system log"); 3 (network diagram including IP addresses for every part of the system, media access control addresses, and credentials to access any encrypted documents); 5 (records concerning intrusion attempts); and 8 (contracts and agreements for network security, network monitoring, and cybersecurity).

available, raising serious questions about whether those machines would now
be more vulnerable to hacking.

Richard L. Hasen, *Identifying and Minimizing the Risk of Election Subversion and Stolen*

*Elections in the Contemporary United States*, 135 Harv. L. Rev. F. 265, 280 (2022) (citations

omitted).  Her deputy clerk has since pled guilty to misdemeanors.[5]  Indeed, in a case currently

pending in the Northern District of Georgia, Judge Amy Totenham declined even to release the

report of an expert witness who had analyzed the Dominion voting system, on the grounds that

its release would jeopardize election security.  *See Curling v. Raffensperger,* 1:21-cv-2989-AT

(Aug. 11, 2022) [ECF 1453 n.6] ("Releasing Dr. Halderman's report, even with the Plaintiffs'

proposed redactions, into the public domain just 89 days before the 2022 General Election could

invite hacking and intrusion efforts, especially given the current heated climate surrounding

voting issues as well as ever heightening concerns about international and domestic

cybersecurity attacks.").

Defendants are requesting through this Subpoena what they would not be permitted to

receive under Florida public records law.  The Florida Legislature recognized that the

cybersecurity of voting systems was crucial when it passed Ch. 2022-221, Laws of Florida,

during the 2022 legislative session.  As codified in Fla. Stat. § 119.0725, the law defines the term

"critical infrastructure",[6] and then exempts the very same information now sought by Defendants

from public records requests:

> 2)  The following information held by an agency is confidential and
> exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution:
>
>                                         * * *

_____

[5]  https://www.theheraldreview.com/news/article/Colorado-clerk-pleads-not-guilty-in-election-17425990.php

[6]  "Critical infrastructure" is defined in Section 119.0725 to mean "existing and proposed
information technology and operational technology system and assets, whether physical or
virtual, the incapacity or destruction of which would negatively affect security, economic
security, public health, or public safety."  Fla. Stat. § 119.0825(1)(b) (2022).

(b)   **Information relating to critical infrastructure**.

(c)   **Cybersecurity incident information** reported pursuant to s. 282.318 or s. 282.3185.

(d)   **Network schematics, hardware and software configurations, or encryption information or information** that identifies detection, investigation, or response practices for suspected or confirmed cybersecurity incidents, including suspected or confirmed breaches, if the disclosure of such information would facilitate unauthorized access to or unauthorized modification, disclosure, or destruction of:

      1.   Data or information, whether physical or virtual; or

      2.   Information technology resources, which include an agency's existing or proposed information technology systems.

Fla. Stat. § 119.0725 (emphases added).  Copies of program codes, user and operator manuals, and copies of all software and any other information, specifications or documentations that a voting system company is required to submit to the Florida Secretary of State in order to gain approval of an electronic or electronomechanical voting system, *see* Fla. Stat. § 101.5607(1)(a), are therefore also exempt from public records requests under Florida law.  Fla. Stat. § 119.071(1)(f).

Rule 45(d)(3)(A)(iii) states that a subpoena must be quashed if the subpoena calls for the production of not only privileged but also "other protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  As the Eleventh Circuit has noted, "caselaw has not fleshed out the definition of the term 'other protected matter,' . . .."  *Jordan v. Commissioner, Miss. Dep't of Corrections*, 947 F.3d 1322, 1336 (11th Cir. 2020); *see also Bhatt v. Lalit Patel Physician P.C.*, No. 18-cv-2063, 2020 WL 13048694, at *2 (E.D. N.Y. 2020) ("Tax returns constitute 'other protected matter' under Rule 45(d)(3)(A)(iii)."); *and see Benedict v. McMahon*, 325 F.R.D. 447, 452 (E.D. Pa. 2016) (expunged criminal records are protected matter within the meaning of Rule 45(d)(3)(A)(iii)).

The Subpoena seeks forensic images, documents and information regarding Monroe County's voting system, its critical infrastructure.  The images, documents and information constitute "other protected matter" within the meaning of Rule 45(d)(3)(A)(iii).  The Subpoena must therefore be quashed.

II.     **THE SUBPOENA SHOULD BE QUASHED BECAUSE IT CALLS FOR DISCOVERY OF CONFIDENTIAL AND PROPRIETARY INFORMATION, WHICH THE SUPERVISOR OF ELECTIONS IS OBLIGATED TO KEEP PRIVATE PER THE TERMS OF THE AGREEMENT BETWEEN MONROE COUNTY AND DOMINION.**

Rule 45(d)(3)(B) provides that a court "may, on motion, quash or modify the subpoena if it requires:  (i) disclosing a trade secret or other confidential research, development, or commercial information; . . .."  Fed. R. Civ. P. 45(d)(3)(B)(i).  "What constitutes a 'trade secret' is a question of fact for the trial court."  *Premier Election Solutions, Inc. v. Systest Labs, Inc.*, No. 09-cv-01822-WDM-KMT, quoting *Haggard v. Spine*, 2009 WL 1655030, at *7 (D. Colo. 2009).  "When the party responding to the subpoena shows that the requested information is confidential and that its disclosure might be harmful, the party seeking discovery must show that the information is not only relevant, but also necessary to its case."  *United Technologies Corp. v. Mazer*, No. 05-80980-CIV, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007).  "[T]he status of a person as a non-party is a factor that weighs against disclosure."  *Amer. Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999).

Numerous cases have recognized that software, hardware, and other information associated with voting machines qualify as proprietary trade secrets.  *See Jennings v. Elections Canvassing Comm'n*, 958 So. 2d 1083 (Fla. 1st DCA 2007) (affirming order denying disgruntled losing candidate's motion to compel voting machine company Election Systems & Software to disclose "source code and other proprietary software associated with certain voting machines");

10

*Premier Election Solutions, Inc.*, 2009 WL 3075597, at 7 (quashing subpoena aimed at a non-party competitor company that performed voting machine testing, on the grounds that the "test cases" and "trusted builds" constituted highly confidential competitive trade secrets); *Curling v. Raffensperger*, 493 F. Supp. 1264, 1279 (N.D. Ga. 2020) (referring to "Dominion's **proprietary software**"); *see also id.* at n. 80 (referring to the Dominion ImageCast Precinct Scanner and Tabulator, and saying, "It is a **proprietary Dominion product**") (emphases added).

Florida defines the term "trade secret" broadly.  *See* Fla. Stat. § 812.081(1)(f) (defining "trade secret" to mean "the whole or any portion  . . . of any . . . compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, . . .."

Dominion's trade secrets are spelled out in the Voting System Agreement between Monroe County and Dominion Voting Systems, Inc. for the purchase of the voting systems and software licenses.  (**Exhibit B.**)  Section 12 of the Agreement defines the term "Confidential Information" to mean (a) those materials that the disclosing Party (Dominion) maintains as trade secrets or confidential and which are disclosed to the receiving party (Monroe County) marked with the word "confidential" or a similar word, or (b) which are expressly identified in Subsection 12.1 of the Agreement as confidential.  The Agreement states that source code and associated documentation are confidential.  Exhibit B to the Agreement is a Software License Agreement.  Within Exhibit B, Section 7 states that the Licensee (Monroe County) acknowledges that the Software and related documentation constitute confidential and proprietary trade secrets, disclosure of which would materially injure Dominion's business and competitive position.  The term "Software" is defined there to mean all software and firmware licensed by Dominion, in object code form, including all documentation.  Section 7 further states

11

that disclosure will be limited to employees of the SOE having a need to know in order to perform their duties.  Section 8 of the Software License Agreement goes on to state that the SOE will not, without written permission of Dominion, transfer or copy the Software onto any other storage device or hardware except for the purposes of system backup.

Any part of the production sought by Defendants through Requests 1(a)-h) (forensic images of all drives and storage devices), 2(a)-(b) (forensic copies of all slog.txt files and dvd files and all "data items"), 3(a) and (c) (network diagram, network logs, PCAPs,[7] netflow data and access control logs from networking devices), would require the SOE to "transfer or copy" the Software in violation of the Software License Agreement.  Leaving aside all other concerns, the Agreement evidences the fact that Dominion has taken proper steps to safeguard its proprietary confidential information.  The SOE, a non-party to this dispute, should not be placed in the position of being forced to breach its Agreement by disclosing the information.

With regard to the Requests listed above, because the Subpoena requests confidential and proprietary trade secrets, the Subpoena should be quashed.

## III.   THE SUBPOENA MUST BE QUASHED BECAUSE IT IS UNDULY BURDENSOME, BOTH IN THE ABSOLUTE AND PARTICULARLY AS APPLIED TO A LOCAL JURISDICTION LESS THAN SEVEN WEEKS AWAY FROM A MIDTERM ELECTION.

Rule 45(d)(3)(A) provides that the court must quash or modify a subpoena that subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  The moving party has the burden of proof to demonstrate that "compliance with the subpoena would be 'unreasonable and oppressive.'"  *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citations omitted).  However, it is the burden of the party seeking discovery to prove that its

---

[7]  A PCAP is an "application programming interface (API) for capturing network traffic.  "Can intercept and log traffic that passes over a computer network or part of a network." https://en.wikipedia.org/wiki/Pcap

requests are relevant.  *See Fadalla v. Life Automotive Prod.*, 258 F.R.D. 501 (M.D. Fla. 2007) (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

To determine whether a subpoena presents an undue burden, courts consider six factors: (1) relevance of the information requested; (2) need of the party for the documents; (3) breadth of the document request; (4) time period covered by the request; (5) particularity with which the party describes the requested documents; and (6) the burden imposed.  *See Wiwa*, 392 F.3d at 818, citing *Williams v. City of* Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998).  The status of the responding party as a non-party is a factor that weighs against disclosure.  *See Am. Electric Power,* 191 F.R.D. at 133; *Wiwa*, 392 F.3d at 818 ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.").

Under any circumstance, this Subpoena is unduly burdensome.  Nowhere does the Complaint mention Monroe County (or any local jurisdiction).  Defendants so far have been unable to demonstrate any relevance of the documents.  If Defendants have some information to show that the Monroe County voting system was somehow hacked or manipulated during the 2020 election, they have no need for this discovery.  Conversely, if they have no such information, this Subpoena is merely a fishing expedition.

The documents cover an extensive time span.  Four of the requests have an unlimited time span except "used in connection with" or "in relation to" the November 2020 election, (items 1(a)-(h), 2(b), 4(a)-(c)).  Two of the requests (3(b) and 3(e)) seek documents over a 22-month time period (Jan. 1 2019 – Nov. 30, 2020).  The remainder (2(a), 3(a), (c)-(d), and (5)-(8)) have no time limitation at all.

The Subpoena calls for production of forensic images and documents that are well beyond the expertise of her staff to produce, which thus would require the Supervisor to hire computer experts to produce, including forensic images of all drives "in EnCase format" (Request 1); forensic copies of system log files (Request 2(a)); MAC addresses for all devices (Requests (3)(a)-(b)); and network logs, PCAPs, netflow data and access control logs from networking devices (Request 3(c)).  (Aff. Griffin ¶¶ 7, 9.)

The Subpoena is also burdensome in the breadth and volume of documents requested, including "all tabulator poll closing reports and tabulator reports generated by each precinct and polling location,[8] detailing with date and time the number of in person voters, the same day voter registrations (if applicable), and the final totals of the precinct" (Request 4(a); and copies of "any document, report, or spreadsheet" that was produced in relation to the November 2020 election (Request 4(c)).  The SOE has a staff of only 9 people split among three offices, each of which is nearly 50 miles apart from the next.  Production of the forensic images and documents will take hundreds of hours and thousands of dollars.  (Aff. Griffin ¶ 10.)  Even if the documents are relevant, which has not been shown, the burden is overwhelming.

The subpoena is particularly extraordinarily burdensome at this time.  The midterm election will be held in just over six weeks, on November 8, 2022.  The SOE is responsible under Florida law for ensuring that all of the requirements for elections in Florida law are properly carried out.  Chapter 101, Florida Statutes, lays out the numerous steps that a Supervisor of Elections must supervise between now and the midterm elections, which include registration of voters (Fla. Stat. § 101.45); preparation of the ballots, testing of the ballots by Dominion, and approval of the ballots by the ballot board (Fla. Stat. § 101.5610); logic and accuracy testing to

---

[8]  Monroe County has 33 precincts.

ensure that the ballots are reading correctly (Fla. Stat. § 101.5612); followed by the election.[9] All of the deadlines are strictly prescribed by statute.  There is not sufficient time between now and the election to create the forensic images or produce the documents requested through the subpoena.  (Aff. Griffin ¶ 10.)  Diverting resources and time towards creating and producing these images would impose a significant burden on both the County and the public and could jeopardize the safe and orderly administration of the election.

There is another burden.  All voting systems must be submitted to the Department of State, Division of Elections for approval.  Fla. Stat. § 101.5605.  Disclosure of either the local voting system information (including the system diagram, MAC addresses, slog.txt files and PCAPs) *or* any of Dominion's confidential information (including software, firmware, and source codes) raises the risk of intrusion by a third party, making it likely that the voting systems will need to be changed.  (Aff. Griffin ¶ 8.)  All changes to a voting system must be approved by the Department of State prior to use by a County.  Fla. Stat. § 101.5605(3)(e).  There is no time for the changes before the midterm elections.

## IV.   IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ISSUED TO ALLOW FOR PRODUCTION OF REPORTS SOUGHT IN REQUESTS 4(A)-(B), 7 AND 8, AFTER THE ELECTION.

As explained above, there is no protective order that is likely to protect against the disclosure of information that would compromise cybersecurity, or as to confidential trade

---

[9]  Additionally, vote-by-mail ballots to overseas voters must be sent by September 24, 2022; ballots to domestic voters are sent September 29-October 6, 2022; and early voting is held October 29-November 5, 2022 with optional days on October 24-28 and November 6, 2022. These actions stretch the election into a multi-week event.  *See* Florida Division of Elections, *Election Dates and Activities Calendar 2022-2023*, available at: https://dos.myflorida.com/elections/for-voters/election-dates/ and https://dos.myflorida.com/elections/forms-publications/publications/.

secrets.  However, as to the reports sought in Requests 4(a) and (b), and the agreement sought between Monroe County and Dominion in Requests 7 and 8, SOE can produce the documents, provided the production does not take place until after the election, and provided the SOE is compensated for the extra expense of the production.

**CONCLUSION**

Defendants' demand for a blueprint to the inner workings of the County's voting system is extraordinary, unnecessary, and unprecedented.  Production of the majority of information demanded by the Subpoena would constitute an extreme cybersecurity breach and would be contrary to federal and state laws keeping the information private.  The Subpoena would require the SOE to produce trade secrets, in breach of her agreement with Dominion.  Finally, the Subpoena is unduly burdensome, because it is far beyond the resources of the SOE to provide the documents and information requested, particularly on the eve of a midterm election, and there has been no adequate showing of relevance.  For all of the above reasons, Non-Party SOE respectfully requests that this Court quash the subpoena.

**CERTIFICATE OF GOOD FAITH COMPLIANCE WITH LOCAL RULE 7.1**

In compliance with Local Rule 7.1, I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this Motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

By: _____*Cynthia L. Hall*_____

MONROE COUNTY ATTORNEY'S OFFICE
1111 12th St. Suite 408
Key West, FL 33040
Tel:  (305) 292-3470
Fax:  (305) 292-3516
Robert B. Shillinger, Jr. (Fla. Bar 058262)
County Attorney
Shillinger-bob@monroecounty-fl.gov
Cynthia L. Hall (Fla. Bar 34218)
Sr. Assistant County Attorney
Hall-cynthia@monroecounty-fl.gov
Patricia A. Eables (Fla. Bar 491012)
Assistant County Attorney
Eables-patricia@monroecounty-fl.gov

*Counsel of Record for Hon. R. Joyce Griffin,*
*Supervisor of Elections for Monroe County, Florida*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2022, the foregoing document entitled Motion to Quash Rule 45 Subpoena and Incorporated Memorandum of Law was served using the following methods on the below interested parties:

Via e-mail:
Andrew D. Parker, Esq.
123 North Third St., Suite 888
Minneapolis, MN 55401
parker@parkerdk.com
612-355-4100

_____ /s/ _____
By:  Cynthia L. Hall